H. B. House, Petitioner, v. Commissioner.
House v. Commissioner
Docket No. 68681.
United States Tax Court
T.C. Memo 1959-47; 1959 Tax Ct. Memo LEXIS 203; 18 T.C.M. (CCH) 219; T.C.M. (RIA) 59047; March 9, 1959
C. Orman Manahan, Esq., for the petitioner. Herbert A. Seidman, Esq., for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined deficiencies in the income tax of petitioner for the taxable *204 years 1953 and 1954 in the amounts of $604.21 and $497.04, respectively. Certain of the issues raised by petitioner were conceded by him at the hearing. The remaining issues involve the correctness of respondent's action in (1) reducing petitioner's allowable loss from a partnership, Henry House & Sons, for the year 1953; (2) disallowing petitioner dependency credits for his sister for each of the years 1953 and 1954; (3) disallowing a deduction for medical expenses claimed by petitioner to have been paid for his sister during the years 1953 and 1954; and (4) adding to petitioner's income for the year 1954 reimbursements received by petitioner for automobile and travel expense. Findings of Fact The stipulations of the parties, made orally at the hearing, are adopted by this reference. Petitioner, unmarried, is a resident of Ellicott City, Maryland, and filed his income tax returns for the years 1953 and 1954 with the district director of internal revenue for the district of Maryland. During the years 1953 and 1954 petitioner and his brother, C. M. House, were partners in a partnership, Henry House & Sons, of Ellicott City, Maryland. This partnership also filed its return for *205 the year 1953 with the district director of internal revenue for the district of Maryland. Petitioner owned 88.6 per cent of the partnership and did most of the work for the partnership during 1953 because his brother was ill. The business of the partnership was the construction and repair of houses and it also received income from the rental of two houses. The gross income reported from the construction portion of the partnership business in 1953 was $363.76, which represented income from repair work, no new construction having been performed in 1953. The partnership reported gross rental income of $2,049.50 and a net loss of $2,118.32 for the year 1953. In arriving at net income, the partnership deducted $1,243.27 as automobile expense. Respondent allowed a deduction of only $623.75 as automobile expense in arriving at petitioner's share of the partnership loss. In 1948 the partnership purchased lumber for $8,500. $3,500 worth of this lumber was used by the partnership for the construction of a house in 1950 or 1951. In 1950 or 1951 the partnership started depreciating this lumber at the rate of $400 per year and claimed a deduction of $400 for depreciation on this lumber for *206 the year 1953. Respondent disallowed this $400 deduction. The partnership claimed a deduction for taxes on its return for 1953 in the amount of $494.46, of which $351.70 was for real estate taxes paid with a partnership check. Respondent disallowed $209.24 of this deduction on the ground that that part of the real estate taxes represented a personal expense. During the year 1953 and the first part of the year 1954 petitioner worked five days a week for the Federal Housing Administration, for which he was paid $5,610.41 in salary in the year 1953 and $1,071.06 in the year 1954. Petitioner also received $513.77 from the Federal Housing Administration in 1953 as reimbursement for travel expense. In February of 1954 petitioner was employed by the county commissioners of Howard County, Maryland, as a building inspector. From February through June of 1954 he was paid $10 for each individual house inspected and was required to pay his own travelling expenses. Starting in July of 1954 he was paid a salary of $350 per month and was reimbursed 7 cents a mile for the travelling he did for the County in his own car. The withholding tax statement from the county commissioners filed with petitioner's *207 1954 income tax return shows total wages paid to petitioner of $4,161.50. Petitioner reported $3,321.60 as compensation received from the county commissioners on his 1954 tax return, but claimed no deduction for travel expense. Respondent added to petitioner's reported income for 1954 $1,956.90 received from the Howard County commissioners as reimbursement for automobile and travel expense and allowed an additional deduction of $975.64 for automobile expense attributable to petitioner's employment with the county commissioners. A deduction of $243.91 automobile expense for petitioner's car was also allowed by respondent in recomputing the partnership loss for 1954. The latter amount is not in dispute. During the years 1953 and 1954, and for a number of years prior thereto, petitioner's unmarried, 57-year-old sister, Noretta House, was confined in Spring Grove Hospital, a mental institution owned and operated by the State of Maryland. On Thursday evening and on Sundays of each week during the years 1953 and 1954 petitioner would drive to the hospital and pick up Noretta and take her to his home until she tired and wanted to go back, at which time he would take her back to the hospital. *208 Petitioner gave Noretta whatever money she wanted and bought her the clothes, candy, magazines, and other incidentals she wanted or needed. Petitioner thought the trips home and the purchase of things she needed or wanted had thereapeutic value in the treatment of his sister's mental illness. Petitioner kept a record of his expenditures by check during the years 1953 and 1954. This record consisted of a ledger sheet for each month with columns indicating the date of the check, the amount thereof, to whom paid, and the general accounts to which petitioner allocated the funds drawn. It was petitioner's custom to go through his check book whenever he had time, but at least once a month, and list the checks drawn on this ledger sheet, allocating from memory the amounts thereof to the various columns under headings indicating the accounts for which used. One of the columns was headed "Hosp. Account." Various amounts were entered in this hospital account column each month and a total of $1,341.94 was entered in this column for the year 1953 and $1,304.10 for the year 1954. In most instances the amounts entered in this column represented a part of a check drawn for a larger amount to one *209 William Hood, the balance of the amount of the check being allocated to other columns. This record did not show what the expenditures were for except as could be determined from the name of the payee. Petitioner claimed the $1,341.94 entered in the hospital account as medical expense on his 1953 tax return and $586.10 of the $1,304.10 entered in this column as medical expense on his 1954 tax return. Petitioner claimed his sister as a dependent on his tax returns for both years. Respondent disallowed the dependency credits and the medical expense deduction for both years on the grounds that Noretta did not qualify as a dependent of petitioner and the expenditures made for her did not qualify as medical expenses. According to The Maryland State Budget for the fiscal year ending June 30, 1956, submitted to the General Assembly of Maryland by Theodore R. McKeldin, Governor, dated February 1955, the total annual per capita cost of patients at the Spring Grove State Hospital during the year 1953 was $1,119 and during the year 1954 was $1,175. Petitioner did not provide over half the support of his sister, Noretta House, in either of the years 1953 or 1954. Opinion Issue (1) - Decrease *210 in partnership loss Respondent disallowed the following deductions claimed on the 1953 return for the partnership, Henry House & Sons, which are still in dispute and which reduce the loss allowable to petitioner from this source on his individual return for 1953. A. Depreciation on lumber disallowed. Respondent disallowed a deduction of $400 on lumber purchased in 1948. At the trial petitioner testified that this $8,500 worth of lumber was purchased by the partnership as an investment or for speculation. However, the partnership was in the building business and this lumber was available at all times for use in that business and a good part of it was actually used in the business during 1950 or 1951. Section 23(1), Internal Revenue Code of 1939, allows as a deduction a reasonable amount for the exhaustion, wear and tear of property used in a trade or business or held for the production of income. The regulations interpreting this section have long stated that the allowance for depreciation does not apply to inventories or to stock in trade. See Regulations 118, section 39.23(1)-2. Decreases in the value of inventories are taken care of through inventory valuations and decreases *211 in the value of stock in trade are reflected in the sale price and resulting profit or loss. In our opinion the depreciation deduction is not allowable for property such as the lumber here involved whether it was bought for sale to customers in the ordinary course of the partnership business, as we are inclined to think it was, or for speculation purposes as claimed by petitioner. In either event the purchaser looks to the sale of the property for the recovery of his investment. The depreciation deduction is allowable to permit a taxpayer to recover, for tax purposes, an investment made in property the value of which will be exhausted either in the trade or business of the taxpayer or in the production of income, such as rent. Burton Coal & Lumber Co., 22 B.T.A. 133; Duval Motor Co., 28 T.C. 42. The lumber here involved does not qualify as depreciable property. Respondent's disallowance of this deduction was proper. B. Automobile expense of H. B. House disallowed. Respondent allowed only $623.75 of the $1,243.27 automobile expense claimed on the partnership return. The only evidence in the record to support this deduction are petitioner's ledger sheets *212 described in our findings of fact, and petitioner's oral testimony that the $1,243.27 was spent for "gas, oil, tires, repairs, mileage, and everything else that goes into a man's business to keep him going over the road." On his ledger records mentioned above, under a column headed "Garage," petitioner entered various amounts from time to time which totalled $1,243.27 for the year 1953, which is the same amount claimed as a deduction for travel and automobile expense on the partnership return for that year. The amounts entered in this column were for the most part even dollar amounts applied from larger checks made payable to William Hood. There is nothing in the record, other than petitioner's general statement quoted above, to indicate what the expenditures were for, how they were related to the partnership business, or the mileage travelled. On the other hand, the evidence shows that the partnership had gross income from construction work of only $363.76 for the year, that petitioner was employed five days out of each week throughout the year by the Federal Housing Administration and was reimbursed $513.77 for travel expenses by that employer, and that each Thursday and Sunday *213 he made two trips to the hospital and home again on personal affairs, a distance of about 5 or 6 miles each way. Furthermore, it is our impression from petitioner's testimony and from examining the ledger sheets on which he kept his accounts, that the amounts listed on those sheets represent his total expenditures for the year for personal use as well as for partnership and F.H.A. business. Most of the checks made payable to William Hood were applied in part to this "Garage" account, in part to the "Hosp. Account" and the balance to "H. B. House Personal" account. It is inconceivable to us that petitioner could have spent $1,243.27 on his automobile in travelling on partnership business alone in view of the limited time he had for partnership business and the fact that the partnership had gross income of only $363.76 from business that would require the use of an automobile. Petitioner received $513.77 reimbursement for automobile and travel expense from the F.H.A., which was not for partnership business, and respondent has allowed the partnership a deduction of $623.75 for automobile expense. We think the amount respondent allowed the partnership is liberal under the evidence before *214 us. Respondent's disallowance of this deduction was proper. C. Real estate taxes disallowed. The partnership deducted $494.46 for taxes on its return for 1953, of which $351.70 was for real estate taxes paid with a partnership check. Respondent disallowed $209.24 of this amount with the explanation "Real estate taxes - personal." Both parties state in their briefs that the $351.70 represented taxes on the residence occupied by petitioner and claimed by him to have been used partially as the partnership office and for storing partnership materials. However, petitioner testified that the $351.70 was the total real estate tax paid by the partnership in 1953 and was the tax on four different properties, being the two rental properties, the house in which petitioner's brother lived, and his own residence. Petitioner also testified that the tax disallowed was the assessment against his own and his brother's homes, explaining that "probably $125" of it was tax on his home and "about $104" was tax on his brother's home. There is no evidence in the record as to whether the properties were owned by the partnership or the individual partners. The parties argue this issue solely on proof *215 and lack of proof of the partnership business use of petitioner's home. The only evidence submitted were several oral stipulations of fact made during the course of the trial, documentary evidence introduced at the hearing, and the oral testimony of petitioner. We do not think there is sufficient evidence in this record to permit us to determine first, what portion of the taxes disallowed were attributable to petitioner's home and, second, what part of petitioner's home was used in the partnership business. There is no evidence that any part of petitioner's brother's house was used in partnership business. There is likewise no evidence or claim that these taxes were paid on property used for production of income. So we must therefore find that petitioner has failed to prove that the partnership was entitled to deduct the taxes disallowed as either a business expense or as an expense in connection with property held for the production of rental income. We do not think this would necessarily be a complete answer to the question of deductibility of these taxes if there were sufficient evidence in the record for us to determine who owned the property on which the taxes were paid. Sections *216 181 through 183 and section 23(c) of the Internal Revenue Code of 1939 would seem to allow a partnership a deduction for real property taxes regardless of whether the property is used in the trade or business or is held for the production of income. Whether the deduction should be taken into consideration in computing the partnership ordinary net income or loss or would be deductible by the partners only as a personal deduction, is a question that we do not have to decide because we do not have sufficient proof before us of all the necessary elements involved in the question to make a decision. Respondent disallowed the deduction and the burden is on the petitioner to prove all facts necessary to allow the deduction on whatever ground it may be allowable. Petitioner having failed in his proof, respondent's disallowance of the deduction must stand. From the above it follows that respondent's disallowance of a part of the deduction allowable to petitioner for loss sustained by the partnership, Henry House & Sons, in the year 1953 was correct. Issue (2) - Disallowance of dependency credits for petitioner's sister, Noretta House, for the years 1953 and 1954 To be entitled to an *217 exemption for his sister, petitioner has the burden of proving that he furnished more than one-half of her support. We do not believe petitioner has carried this burden and have found as a fact that he did not furnish more than one-half of her support in either year. The only evidence we have of the total cost of supporting Noretta during these years is the amount shown in the Governor's budget report submitted to the Maryland legislature in 1955 to be the total annual per capita cost of patients at the Spring Grove State Hospital in the years 1953 and 1954, plus the amounts petitioner's records indicate he allocated to the hospital account during each of those years. Petitioner called no witness from the hospital to explain the figure used in the budget report and it is impossible to determine from the report itself what expenditures were considered in arriving at this figure. At best this could represent the cost of keeping the average patient. We received the budget report in evidence because we felt it might be the best evidence available of the cost of keeping petitioner's sister in this hospital. However, without some further evidence as to what goes into the cost shown and *218 whether Noretta was an average patient this evidence is of little value to us on this question. The budget report shows the annual cost per patient to be $1,119 for the year 1953 and $1,175 for the year 1954. In petitioner's records he has allocated $1,341.94 to the hospital account for the year 1953 and $1,304.10, including $260 paid to the county commissioners, to that account for the year 1954. Petitioner testified that the amounts he spent on his sister were entered in the hospital account. Thus, if these records could be accepted as representing the total cost of Noretta's support and the amounts paid by petitioner for her support, it would appear that petitioner paid more than one-half of her support in both years. However, we cannot accept the bare statement of annual patient costs contained in the budget report as proof of the cost of maintaining petitioner's sister in the state hospital, without something more to indicate that the figures mentioned would be applicable to the particular patient involved. Proof of the total cost of support in a case like this may be difficult but unfortunately such difficulty alone does not relieve petitioner of his burden of proof. Burnet v. Houston, 283 U.S. 223; *219 George Ungar, 18 T.C. 688, affd. 204 Fed. (2d) 322. But more important, we cannot accept the evidence before us as proof of the amounts petitioner spent on his sister. Petitioner testified that the amounts he spent on his sister were for food, candy, magazines, eyeglasses, clothes, dry cleaning and incidentals - that he did not buy her medicines or pay doctor bills. She lived at the hospital and apparently the only times petitioner had an opportunity to spend money on her was on Thursday evenings and Sundays. He testified that he could not pay anything directly to the hospital for his sister's care and support. An examination of petitioner's ledger records reveals that most of the amounts entered in the hospital account were even dollar amounts from checks in larger amounts drawn to the order of William Hood. Petitioner did not explain why these checks were drawn to Hood or what business Hood was in - only that he was a man with whom petitioner had dealt for years. The entries indicate that he allocated round figures of $20 per week to this account throughout the year 1953, plus occasional additional amounts, and even amounts of $15 each week during 1954, *220 plus additional amounts from time to time. These are at best mere estimates and we find it hard to believe that petitioner could have spent $20 and $15 every week in the years involved for incidentals such as mentioned above, particularly when the only times his sister was home were on Thursday evening and on Sunday when the stores were most likely closed. Furthermore, we do not think it likely that a person paying only for incidentals for a person who was mentally ill would spend more for such things than it would cost the state for her room, board, medical care and other services provided in the hospital. Petitioner has failed to prove that he paid more than one-half the support of his sister in either 1953 or 1954 and she did not qualify as a dependent in either year. Issue (3) - Disallowance of deduction for medical expense Petitioner claimed the total amount entered in the hospital account as medical expense for his sister for 1953. For some reason, not adequately explained in the record, he used only $1,186.10 of the amount entered in that account for the year 1954 as medical expense. Then, instead of claiming the $1,186.10 as medical expenses in 1954 he claimed an extra *221 exemption of $600 for his sister and used the remaining $586.10 as a medical expense deduction. Inasmuch as we have found that petitioner's sister did not qualify as a dependent in either 1953 or 1954 petitioner is not entitled to deduct medical expenses paid for her, if such they were. To be deductible as medical expense under both section 23(x) of the 1939 Code and section 213 of the 1954 Code, the expenditures must be for medical care of the taxpayer, his spouse, or a dependent as defined in section 25(b)(3) of the 1939 Code and section 152 of the 1954 Code. Furthermore, we do not think expenditures for candy, magazines, clothes and incidentals qualify as medical care within the meaning of the statute, at least in the absence of any medical evidence that they were related to the diagnosis, care, mitigation, or treatment of Noretta's mental illness. Edward A. Havey, 12 T.C. 409. Issue (4) - Addition to income of reimbursement for travel expense for the year 1954 Respondent added to petitioner's income the sum of $1,956.90 as reimbursement for travel expense and allowed petitioner an additional deduction of $975.64 for automobile expense. The record is somewhat *222 confused with respect to this issue, although it seems clear that petitioner did not include the $1,956.90 the respondent claims he was reimbursed by the county commissioners for travel expense in income reported on his tax return for the year 1954. He reported only $3,321.60 as income from the county commissioners whereas the withholding statement indicates he was paid $4,161.50. However, petitioner testified that he received a total of $5,279.10 from the commissioners, including reimbursement for travel expense, and deducted his expenses first to arrive at the figure he reported as taxable wages. Petitioner does not argue that he was not paid $1,956.90 for travel expense, computed at the rate of 7 cents per mile, but argues that he included it in his computations in arriving at the net amount reported. (If we deduct $1,956.90 from the $5,279.10 petitioner says he received from the county commissioners, we come within 60 cents of the $3,321.60 petitioner reported on his return.) The net effect of respondent's adjustments is to charge petitioner with the full amount of the reimbursement but allows him to deduct only about half thereof as an expense. Petitioner's records indicate *223 he actually spent $1,463.47 on his automobile during the year 1954, and this of course does not include depreciation. Petitioner testified that it cost him at least 7 cents per mile to operate his car in 1954. On a statement attached to his return petitioner indicated he claimed a deduction for 21,500 miles at 7 cents per mile, or a total of $1,505. Respondent has allowed the partnership a deduction of $243.91 for petitioner's automobile expense. If a reasonable amount for depreciation is added to petitioner's recorded automobile expenditures, and the total is then allocated, $243.91 to partnership business, $1,505 to the mileage claimed to have been traveled for the county commissioners, and the balance to personal expenses, it would seem to be a reasonable allocation of the cost of operating petitioner's care for the year on the evidence we have before us. Cohan v. Commissioner, 39 Fed. (2d) 540. The respondent was correct in adding to petitioner's income for 1954 the sum of $1,956.90 as reimbursement for travel expenses, but petitioner is entitled to a deduction of $1,505 for travel expenses for the county commissioners of Howard County. Decision will be entered *224 under Rule 50.